IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>    *Plaintiff,*<br><br>     v.<br><br>ARISMENDY MARTINEZ-GERMAN<br>    *Defendant.* | CRIMINAL NO. 23-034(FAB)<br><br>SENTENCING MEMORANDUM |

### Introduction

Arismendy Martinez-German is a 40-year-old illiterate, first-offender Dominican national without financial assets. His poverty and illiteracy lead to his criminal conduct. His history and characteristics, his post-arrest behavior while detained, his specific participation in the charged conduct as well as other mitigating factors- as highlighted in the foregoing memorandum- support the joint sentencing recommendation.

An imprisonment sentence of 150 months as requested by the parties- a downward variance[1] from the guideline range reported in the Presentence Investigation Report (PSR) - will meet the sentencing objectives; it will reflect the seriousness of the offense, will promote respect for the law, will provide just punishment for the offense, will afford adequate deterrence to criminal conduct, and it will protect the public from further crimes of Mr. Martinez.[2]

---

[1] Paragraph 92, page 14 of the PSR states that "the court may consider a sentence under a variance, taking into consideration  defendant's history and characteristics, the nature and circumstances of the offence, as well as the need to promote respect for the law and afford adequate deterrence or the crimes committed by the defendant. Specifically, the Court may consider the sentence recommendation made by the parties, which is a variant sentence from the applicable guideline range."

[2]  A defendant's individualized circumstances influence the offense's seriousness.

## <u>Sentencing Mitigating Factors in Support of the Requested Sentence</u>

*Mr. Martinez suffered  education and financial inequality at his native country. He was abandoned by his father. He was abused by his father's family.*

Mr. Martinez was born in Sabana De La Mar, DR. He was raised by his mother as his father abandoned him when he was a child. Although his father lived in the same town, he did not visit Mr. Martinez nor made any effort to spend time with him. When Mr. Martinez was 10 years old, he went to live with his estranged father for one year. During that year, Mr. Martinez was abused by his father's sister-in-law.

Mr. Martinez was raised poor.[3] He lacked school supplies, shoes, and clothes, among other essential items. There was always food and water, mainly because he worked along his mother and stepfather. Mr. Martinez left school at second grade because he lacked the resources to buy school supplies, shoes, and clothes. At age 40, he still cannot write nor read his native language.

Mr. Martinez started working at a young age, cleaning shoes, and selling peanuts. Eventually he learned skills in construction, painting, and agriculture. For most of his adult life, he has struggled to make ends meet with his limited education. He earned a living working in construction, cleaning shoes, and selling ice cream, pastries, and peanuts. Unfortunately, a month prior to his arrest, Mr. Martinez found himself unemployed.

---

[3] Poverty in the Dominican Republic affects more than a third of the population, with over 20 percent living in extreme poverty.
https://www.worldbank.org/en/country/dominicanrepublic/overview

*Mr. Martinez poses a low risk of recidivism.*

A low risk of recidivism is a powerful mitigation argument. Mr. Martinez' age, employment history, family support, no drug use history, and lack of prior convictions are factors correlated with reduced recidivism.

According to the U.S. Sentencing Commission' studies and empirical data,  factors correlated with reduced recidivism rates include age, employment, education, family support, gender, abstinence from drug use, the non-violent nature of the offense, and prior conviction. Particularly about age, "recidivism rates decline relatively consistently as age increases," and defendants "over the age of forty . . . exhibit markedly lower rates of recidivism in comparison to younger defendants." [4]

*Post-offense rehabilitation*

Post-offense rehabilitation is an appropriate mitigating circumstance for courts to consider. [5] As reported in the PSR at paragraph 68, page 12, Mr. Martinez has been working in the food service area since his placement at MDC-Guaynabo.[6] Working at MDC-Guaynabo has kept him humble, repentant, and grateful.

*Drug amount involved in this case, the primary factor carrying the advisory guideline sentencing recommendation, was not under Mr. Martinez' control.*

Although the parties stipulated Mr. Martinez' criminal responsibility at a base offense level of 34, according to the PSR the base offense level shall be 38, suggesting a

---

[4] U.S. SENTENCING COMM'N, RECIDIVISM AMONG FEDERAL OFFENDERS: A COMPREHENSIVE OVERVIEW (March 2016); U.S. SENTENCING COMM'N, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES (May 2004).
[5] *See Pepper v United States*, 562 U.S. 476 (2011) (holding that, when a defendant's sentence has been set aside on appeal, a district court may consider evidence of the defendant's post-sentencing rehabilitation as a mitigating circumstance).
[6] Mr. Martinez was arrested on January 16, 2023.

sentence 5 to 9 years more severe than the sentence recommended by the parties. Mr. Martinez' lack of control over the specific drug amount involved in this case mitigates his criminal responsibility.[7]

Mr. Martinez was not the owner or supplier of the drugs transported. He was not the organizer, planner nor recruiter of the criminal offense. Mr. Martinez did not decide nor participate in the decision process regarding the specific drug amount to be transported in this case.

*The circumstances of his arrest represent an extraordinary and unusual punishment.*

During the vessel interdiction that lead to Mr. Martinez arrest, CBP MIAs discharged firearms and struck two Dominican nationals. Mr. Martinez was shot with blank bullets and witnessed the two Dominican nationals being shot and dying. These unfortunate events will remain with Mr. Martinez forever.

> "The defendant revealed that this was a difficult venture because he saw two of his fellow nationals die in front of him. He also disclosed having been struck by blank bullets on his left leg and chest. He expressed being surprised to be alive."[8]

---

[7] A defendant's individualized circumstances influence the offense's seriousness. An offense is less serious if the defendant's motives were not at all or not entirely reprehensible, if the defendant's knowledge or intent was diminished, if the offense was the result of a disadvantaged upbringing, abuse or neglect, poverty, addiction or mental illness, if the defendant's role or gain from the offense was comparatively minor, or if restitution was made in whole or in part.

[8] *See* PSR, paragraph 30 at page 8.

The particular circumstances of his arrest represent an extraordinary and unusual punishment that supports the parties' sentencing recommendation.[9]

*Mr. Martinez is a first-time offender.*

As reported in the PSR, according to the National Crime Information Center and the local record check, Mr. Martinez has no known arrests or convictions.

The most persuasive deterrence arguments are about the person being sentenced, particularly if they are a first-time offender. The "first offender" philosophy in sentencing policy generally encourages lower sentences for offenders who have little or no prior criminal conduct. This philosophy, which can be derived directly from the guidelines' Chapter Four introductory commentary, postulates that first offenders are less culpable and less likely to re-offend. As such, they are deserving of reduced punishment. Congress itself in the Sentencing Reform Act of 1984, 28 U.S.C. § 994(j), promotes the first offender philosophy, citing the relevance of reduced sentencing levels for first offenders under the federal sentencing guidelines. *See* Recidivism and The "First Offender," U.S. Sentencing Commission (May 2004).

*Mr. Martinez' acceptance of responsibility and repentance mitigate his punishment.*

An offender's conduct after an offense typically has no effect on his blameworthiness for the offense. All of the information necessary to assess blameworthiness generally exists as soon as the offense has been committed. Nonetheless, what an offender does after committing an offense may have an effect on the proper level of punishment.

---

[9] *United States v. Clough*, 360 F.3d 967, 970 (9th Cir. 2004) (holding that "being shot by law enforcement personnel could theoretically constitute punishment and thus justify a reduced sentence").

Perhaps the most widely recognized extralegal punishment factor is a defendant's acknowledgment of guilt. "True remorse" involves a sincere expression of contrition for the commission of the offense. It might be expressed independently of an acknowledgment of guilt or in conjunction with it. Several writers have advocated the use of true remorse as a mitigator of punishment. Jeffrie Murphy writes that "[t]he repentant person has a better character than the unrepentant person.[10]

RESPECTFULLY SUBMITTED.

I HEREBY CERTIFY that on this date I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record.

In San Juan, Puerto Rico, on this 13th day of September 2024.

*S/Joannie Plaza-Martínez*
Joannie Plaza-Martínez, Esq.
USDC-PR 215604
1300 Ave. Atenas, Apt. 51
San Juan, PR 00926
Phone No. (787)433-0293
Email: lcdaplazamartinez@gmail.com

---

[10] JEFFRIE MURPHY, REPENTANCE, PUNISHMENT, AND MERCY, IN ETZIONI & CARNEY, REPENTANCE: A COMPARATIVE PERSPECTIVE 143, 157 (1997)